Thank you, Your Honor. Andrew Kennedy, on behalf of Robert James, I intend to reserve two minutes for rebuttal, and I'll keep an eye on the clock. May it please the Court, this case involves three principal errors, two by the state court and one by the district court in interpreting those errors. The first is that the Washington Court of Appeals erred in unreasonably requiring Mr. James to make a specific explicit assertion that is not required by the Supreme Court case law. Second, it unreasonably concluded that he had not made such an assertion. And third, the district court erred in providing overdue deference to the findings of the state court. Unless the court prefers I do otherwise, I will address those in turn. So the first issue is that the state court, unreasonably applied, clearly established federal law when it required Mr. James explicitly state that he would have accepted the plea deal but for counsel's There had to be evidence that he would have. No, the state court said that he said, it said James does not assert that he would have accepted the plea deal, and this is fatal to his claim. Well, assert, there has to be some evidence, isn't there? Well, if Your Honor is interpreting that as merely stating there needs to be some evidence, then yes. That is within what the Supreme Court has held. But in my reading of it, the state court specifically said that he did not assert it, that the state court was requiring him to make a specific assertion, I, Robert James, would have accepted this deal had counsel properly informed me. And that's not what the Supreme Court case law requires. Go ahead, I'm sorry. Can you answer for me, what does affected mean? What does affected mean? Affected, yeah. He said it would have affected his decision. But affected doesn't mean that he would have taken it, does it? In this context, I believe it does. For instance, if I were to say, I was thinking about doing this argument via Zoom, but I heard that it was glitchy and that affected my decision to argue in person, I think it's clear that what I'm saying is that I'm arguing in person because Zoom is glitchy. Wouldn't it have been so much easier for him to say, if I had known this, I would have taken the plea? Sure, it would have been easier for him to say that. Isn't that what most, probably most people would have said, rather than saying, well, it affected my decision. I mean, all sorts of things can affect something, right? I think it may have been more clear for him to do that, but I also think it's important to note that Mr. James is a pro se petitioner whose pleadings are to be construed liberally, and I think that what he said is clear enough that he was impacted by that. So if we take your understanding of Lafler, which is the petitioner or the defendant, it does not need to say, I would have taken the offer, but it's clear that Lafler says there has to be evidence that he would have, right? Yes, the petitioner needs to show reasonable. The one thing that struck me when I looked, I looked for signs about, any signs from your client that he would have taken the offer, okay? And instead you see some things like, well, I was innocent or not guilty, and I wasn't guilty of this, but had I known about the true meaning of the DNA evidence, I would have, maybe I would have taken it. But he says that, he uses words that he was not guilty. He did say that he was innocent. However, as I demonstrated in my opening brief, regrettably in our criminal justice system, there are far too many innocent people who, for whatever reason, end up pleading guilty. I think the clearest evidence that Mr. James, there was a reasonable probability he was thinking about taking that, he was thinking about taking the deal, and there was a reasonable probability he would have accepted it, are his back and forth with counsel about following up on the DNA request. If he wasn't considering taking the offer, if he didn't think that, if the DNA didn't exonerate him, it would not have made sense to take the offer, he wouldn't have been as adamant that counsel keep following up with the state crime lab to ensure that the DNA was accurate. However, once counsel told him that he had confirmed that the DNA was accurate, that's when he decided, well, of course, I should not take this deal. I should go forward because there's, the evidence is clear that I will be acquitted. But wasn't, I mean, seems to me that the evidence, forget the DNA evidence, but wasn't the evidence pretty compelling for finding a guilt anyway? Well, I think that's exactly the reason why. So that being the case, forget the DNA evidence, wouldn't he have been likely to accept the deal knowing what the rest of the evidence was? I don't think so because the other evidence was all circumstantial, whereas the DNA evidence, if it did contain someone else's DNA, would have completely, not completely exonerated him, but would have been pretty strong evidence that there's a reasonable doubt that he was the one that did it because if someone else's DNA was found in the area that the rape allegedly occurred, then a jury would not conclude that it had to be him that did it. That might've gone along with his testimony that there was a transient, that he saw a transient outside the hotel. Yes, that was his rendition of what occurred. Yes. And again, I think that with the DNA evidence, that would be consistent with his interpretation of what happened, that he had had a consensual exchange with the victim, they did not end up having sex, and that someone else came in later and raped the victim, which would have supplied that DNA in the area where, according to counsel, the DNA was found, but it was not. I think the other issue that we need to identify here is that the district court erred in being overly deferential to the state court's finding. If you read the magistrate judge's report and recommendation which was adopted by the district judge, the magistrate judge is very explicit that he is making his decision based on the deference that he owes to the state court and mentions that he owes double deference. Double deference only applies in the case of prejudice, not in the case, or excuse me, only in the case of deficient performance, not in the case of prejudice. And so the district court should not have deferred to the state court as much as it did. So I think for that reason, aside from anything else, the case should be remanded for the district court to evaluate it based on the proper level of deference. It was still required to give some deference. It was required to give deference. It was required to find that- The court of appeal decided the issue. It was required to find that the state court's decision was not unreasonable, but it was not required to find unreasonable, unreasonability on top of unreasonability, which is required. So caps, you know, summarize in the 30 seconds or whatever you're gonna have before you need to sit down. Why was the state court of appeals decision unreasonable? The state court's decision was unreasonable- With some deference in mind. Yes, the state court's decision was unreasonable because I believe it did require a showing that Lafleur doesn't require. But even if this court disagrees with me and finds that it didn't require that specific explicit showing, Mr. James was clear in saying repeatedly that it impacted his decision, that he couldn't gauge the strengths and weaknesses of his case. And that indicates that there's a reasonable probability that he would have accepted the deal, but for counsel's unprofessional conduct. In my last few seconds, I'd just like to mention, I know that this court hasn't accepted the other issues for the other uncertified issues, and I'm not gonna get into them, but Mr. James feels that they're important. And I would stress to the court that I would like the court to consider them. I believe that the decision of the district court should be reversed and the case remanded. Thank you. I'll reserve the remainder of my time. We'll hear from the government. May it please the court. My name is Mark Fowler, assistant attorney general for the state of Washington. On behalf of the app, I'll ease asking you to affirm the decision by the lower court to deny habeas relief. The court correctly found that the state court did not render an adjudication that was contrary to nor unreasonable application of controlling US Supreme Court precedent. Um, to address Mr. James's argument directly, it's not the case here. It is not dispositive that what Mr. Raffaele had properly perfected his claim in the state court. Granting for the sake of argument that Mr. Kennedy has stated is true, that Mr. James would say that he would have taken the plea deal. He still cannot prevail under habeas. He cannot prevail and win this case because the issue will always be whether or not the state court in adjudicating and deciding the facts as presented by Mr. James in his post-conviction collateral relief proceeding, but more importantly, the evidence surrounding the facts that Mr. James was facing at the time that he rejected the plea and decided to go to trial. The question is, did the state court reasonably decide that? Or in other words, can no fair-minded jurist come to the same conclusion or would never come to the same conclusion the state court did? Well, that simply cannot be. The evidence surrounding the facts include an overwhelming case against Mr. James. But I'm having trouble figuring out why that matters. It sounds like your argument is, even if he had said, I would have taken the plea deal, right? Like if he had said that, so that we didn't have this whole issue of him sort of seeming kind of ambivalent about whether he would have taken it until this appeal. But if he just said, I would have taken the plea deal, full stop, your argument is that we, that the state court's conclusion that that didn't affect anything, they would win on that? Yes, the state court is reasonable determination based on the facts. Even if he said, I would have taken the plea deal, the- A hard argument. Sorry? Yeah, that seems to me like a hard argument. Well, even granting that- You're taking a really hard argument. Even in granting that- You don't need to go there. Well, I certainly don't. It's a hard argument. Your Honor, even if I don't need to go there,  that substantiate the expressed preferences of the defendant. He wanted to go to trial. The only reason why he stated on the record is why he rejected the plea deals, because he believed in his actual innocence and he was compelled and committed to take this high risk defense of going to trial based on those facts. It's a rare habeas case that we see such, the kind of ineffectiveness that's demonstrated here. This was a major flub by the lawyer. Absolutely. Clearly was. Absolutely. And that evidence was significant when you put it in context of what his story was, that when he left the hotel, there was this transient person outside that the victim was talking to at the time. I mean, if he had known that the DNA evidence foreclosed that, you don't think he would've taken the F? You're saying that that would be insufficient? Your Honor, clearly there was deficient performance, and I think that the district court is accrediting the reasonableness of the determination by the state court finding the same point. However, the prejudice cannot be shown given that this DNA report, unlike other DNA reports that we've seen in the context, it was never going to not prove that Mr. James's DNA was found all over her body, except for her genitalia area. It was found particularly around both sides of her neck, corroborating the victim saying I was nearly strangled to death, and also corroborating the observation by medical personnel and police on the scene showing there were bruises around her neck and red marks. Your Honor, I would respectfully disagree that this evidence was important. It was a small and insignificant embellishment on a very weak defense that wasn't going anywhere in the first place, and Mr. James knew that even before the DNA report came in. As I understand it, it's not that this evidence would have foreclosed. It's that he thought that the way that counsel read the evidence, it seems like, was that that made clear that somebody else was involved. That's how he was interpreting the evidence. But in reality, the evidence doesn't show that somebody else was involved. That obviously doesn't foreclose that somebody else could have been involved, right? I think that's how I understood that. Right. And it still is left up to the state court to decide in what way. But it still would be very powerful if his counsel had been right that he could have pointed to say somebody else was involved. I think that was what Judge Pius was getting at. I think that would be very powerful. That would be very helpful to saying there's DNA evidence in an important area that shows that somebody else was involved. That's what her counsel thought, right? And it turns out that he didn't have that proof that could have been somebody else involved, I suppose, just they didn't leave any DNA, but he just didn't have that proof. So that seems pretty important. I just thought, it seems like, I think, Judge Pius, you're making the hardest, the strongest argument, your strongest argument is the one that you're sort of just saying, well, you've been assuming it's not true, which is, I mean, he's not,  that it may have affected, it may have influenced, impacted, but he never says it actually would have changed the result even when he's counseled, as I understand, like the first, until now, even when he was counseled, I forget what he said, but even when he was counseled, he, in his first federal habeas in district court, I don't believe he affirmatively said that it would have changed the result. Is that right? Right, he, we have statements from Mr. James that most that he wanted was a weighing, not another choice to, not a choice to actually take the plea, but he would prefer a weighing. And again, the dispositive issue was whether or not the state court was unreasonable in making determination that there was no proof or sufficient proof to show or substantiate prejudice that a credible, reasonable probability would be under the facts that he would have taken the plea. What Mr. Kennedy is relying upon are some, after the fact, common sense assessments of what a reasonable defendant might do. But the Supreme Court precedent, more particularly recently in 2017 in Lee versus United States, where Chief Justice Roberts is indicating that it's not necessarily what a reasonable defendant would do, it's what this defendant would do under the facts and proof showing what his expressed preferences were. His expressed preference, even before he got, there was a four month delay between the crime and the DNA report release. Mr. James was already, if you will, gung-ho on going to trial because he wanted to all, he wanted to tell the jury that he was actually innocent, even though, you know, he's seen with the woman, the victim, the victim has identified him in statements, although there was some issue about her credibility because of her memory lapses and potential mental deficiencies. But the, you know, he was going into trial already having to admit that he had admitted he spent the night with her. He admitted that they disrobed. He admitted almost everything except the fact that he said he didn't have sex because they were too drunk to do so. His underwear is found in the room with blood on it. Did he get a worse sentence because he went to trial as to what he would have gotten from, because, I mean, but you're basically arguing he would have been convicted if he went to trial and that may very well may be true, but still may plead just because you might get a better sentence if you plead. Did he get, is there any evidence of disparity between sentences he would have gotten? I think Mr. Kennedy might have appended to the habeas petition some evidence that wasn't developed below regarding the plea, perhaps offering 80 months. And I think Mr. James got 120. That's what he got at trial? After trial. After trial, that's what he says. I'm not sure of that because that's not in the record. It's not credible evidence in the record. But Your Honor, I would point back to, and in taking and acknowledging your concern that I'm on wheat ground, Your Honor. Well, no, it's not, no, it's just, you don't need to go there. Well, exactly my point, Your Honor. You don't need to, you don't need to, you know. Sometimes less is more. Yeah, you don't need to take, right, Your Honor, okay. So you're in the world of habeas, you're in the land of habeas, you know, and that's your best argument. This is, this is. Well, that's the argument, exactly, Your Honor. As I said to counsel when he was up here, you know, when I searched the record high and low to see what Mr. James said about whether or not he would have taken the offer. And the best thing that I could come up with, and it doesn't really, it kind of hurts him, is in his brief, in his pro se handwritten brief to the Washington Court of Appeal, buried in page 36, he says, and while Petitioner, this is, and I'm quoting from his handwritten argument, he says, and while Petitioner James based his refusal of a plea offer on the fact that he was innocent of the charge against him, the effect of prejudice caused by defense counsel's failure to investigate the results of the DNA report is still manifest in defense counsel Nagel's statement to Petitioner that no further investigation was needed. So he says there that, you know, in his own words, that refusal was based on the fact that he was innocent of the charge. I mean, that's. So, counsel, you're 30 seconds over, so do you agree or do you disagree with Judge Pai's statement? I agree. Okay, that sounds good. At this point, about my point. So thank you very much. Thank you, counsel. We'll hear from, we'll hear from Mr. James, counsel. I do have a, actually, an important question. Your argument is, you know, that it, you're saying no magic words, and that makes sense. I agree with you on the magic, on the no magic words. The thing that's a struggle in this case is, for me, is that Mr. James, you know, he's writing pro se until he gets, and he keeps being told by the Washington courts that, he keeps being told by them, hey, here's your flaws, here's your flaws, but you're not telling us something. And you would think that he would respond to that, but he doesn't, right? He doesn't until, I think, basically, from my perspective, until this appeal, you, I guess. And so, it's not so much a magic words thing, it's just he's given that opportunity again and again. What do you think of that? I wouldn't say he was quite given that exact opportunity over and over again. The first time he went before the Washington Court of Appeals, they held that there was no deficient performance even, which I think, frankly, goes to, I understand that we're talking about a different decision now, but this is the same court that, in this case, where Judge Pius identified- But he won on that, right? Because that went up to the Washington Supreme Court and they sent it back. I'm talking about after that, you know, there's every layer, they keep telling him what his problem is, that we're not seeing, I mean, basically, what I think Judge Pius just said. And he doesn't respond by going, no, no, no, what I meant to say was it did absolutely affect. Instead, he just keeps on saying, you know, like these kind of vague statements. Well, in my opinion, I don't think, well, I don't think he believed they were that vague, I think is the answer. Your Honor asked about what he said in counsel pleading. I have it right here. He said, his counsel, an attorney said, counsel's failure to reasonably evaluate the evidence prior to trial impacted petitioner's ability to make a meaningful decision about whether to accept a plea offer. I think that that, again, is evident that at least he believed, and counsel believed, that he had made the showing that he needed to make. And to require something else. I'm sorry, but that still doesn't say that he said that he would have taken the plea deal. Well, again, he didn't say it in so many words. It may have influenced, isn't that counsel's word, may have influenced? I mean, although petitioner suggested that defense counsel may have influenced his decision. Counsel said it impacted his ability to make a meaningful decision. Again, I would say that, as I presented in my hypothetical, if I were to say the glitchiness of Zoom impacted my decision to come here, there's no question that I'm saying- What's doing the work in your hypothetical is that you're here now, right? So we know, like, you know, we can go, okay, it impacted your ability to come here, and we know that it actually did change your decision because you're here. But if he said something impacted and we don't know, I mean, I think we would all be sitting here saying, so what was the outcome? We don't know what the outcome was. Well, the outcome was that he rejected the deal. So I would say that him saying it impacted my decision means absent that information, I would not have rejected the deal, which is I did. The other part of the statement that I read, it goes on to say that the misadvice that he got from counsel, a counsel's failure to contact the lab and to better understand what the DNA results meant, was that he said, I gotta take off my glasses, can't read. He points to the ruling above to, that's him, he's pointing to, he's referring to himself, his claim of ineffective assistance, despite his claim of actual innocence, which prevented him from accepting the plea offer. I think in that case, there's a question about what does, which prevented him modifies there in that sentence. Again, I think that we need to ultimately consider that we're dealing with an uneducated pro se petitioner who's trying to do the best that he can. This is the first time that he's been afforded counsel and he's done the best that he could to present this issue. I think to require something else would be to essentially make- The prevented to was the bad advice. Prevented him, what he's saying- Yes, the bad advice- Despite my belief that I'm innocent, the bad advice that I got from counsel or the ineffective advice I got from counsel prevented me from taking it. Yes, yes, I believe so. I think Mr. James is clear that the advice that counsel gave him impacted his decision and that means that there's a reasonable probability that he would have accepted. I see that I'm well over my time, so unless the court has other questions, I'll ask that the case be- Either of my colleagues have other questions? Thank you, counsel. Thank you to both counsel for your argument this morning. This case, James versus Jackson, will be submitted as of this morning.
judges: PAEZ, VANDYKE, Benitez